WALTER M. CONKEY, Respondent, v. THOMAS H. BOND, Appellant.

*Stock Agent to buy may not sell to his Principal—Sale voidable.*

An agent, in assuming to buy stock for his principal, cannot set over to his principal, without his knowledge or consent, stock of his own as stock purchased on the authority of his principal, and the principal, on discovering the fraud, may disaffirm the transaction and recover back the money paid by him for the same. The agent stands in such relation of trust and confidence to his principal as to disable him from concluding a contract with himself without the knowledge and assent of his principal.

Appeal from the Supreme Court. The action was brought to rescind a sale of stock in the Oswego Starch Company, made by the Defendant to the Plaintiff in February, 1857, and to recover $1,500, the price paid therefor, and certain payments made by the Plaintiff as a stockholder. The complaint alleged the facts upon which the Plaintiff claimed, and that the sale was fraudulent in fact and in law. These were, in substance, that the Defendant undertook to purchase stock in that Company as his agent, and that he fraudulently transferred his own stock to the Plaintiff, at a price greatly exceeding its value, under the pretence that it was the stock of other parties, which he had purchased for the Plaintiff, as his agent; that he concealed this fact from the Plaintiff, and upon its discovery by the latter, shortly before the commencement of this suit, he refused to rescind the sale. The complaint further alleged that the Defendant made false representations to the Plaintiff as to the value of the stock and the financial condition of the Company, to induce him to make the purchase.

The judge before whom the cause was tried found that no representations were made by the Defendant which he knew to be false, and was of opinion that the other facts, established by the pleadings and proof, did not entitle the Plaintiff to relief. These were substantially as follows :

In January, 1857, the Defendant was the owner of a number

of shares of the Oswego River Starch Company, and the agent of the Company in the city of New York for disposing of its manufactures.   In an interview at that date between the parties, in New York, after a glowing account by the Defendant of the business of the concern, and of which the Plaintiff had previously no knowledge whatever, the Plaintiff expressed the desire to purchase some one or two thousand dollars' worth of the stock, if any was to be obtained in the market, at a price *not exceeding* $150 per share.   The Defendant thereupon undertook to buy some, if it could be procured, and if successful, he was to apprise the Plaintiff, who resided in the county of Chenango.   Accordingly, on the 31st of January, 1857, he addressed a letter to the Plaintiff, reiterating his opinion of the value of the investment, stating that he knew where he could obtain the shares at $150 per share, and asking Defendant if he would like it.   He stated further, that he did not wish to advise the Plaintiff, but if he should conclude to take the stock he would " get and send him a certificate " for that amount.   The Plaintiff answered this letter on the 5th of February, remarking that he liked the statement, and was willing to take that amount, and desiring the Defendant to *obtain the certificate*, when he would at once put him in funds.   This letter the Defendant acknowledged on the 19th by a brief note, saying that he would write and get the certificate as soon as possible; and on the 25th of February he wrote again, enclosing the Plaintiff the scrip for ten shares of the stock, and adding, in a postscript, " If we meet with no mishap, I think our stock will pay well; I could sell quick at $150, if *I had any to dispose of.*" The Plaintiff remitted the $1,500, and that closed the transaction.

The Defendant did not, in fact, purchase any stock from the Company or from any outside party, but caused ten shares of his own stock to be transferred to the Plaintiff.   He did not communicate this fact to the Plaintiff at any time during the negotiation, or subsequently ; and it was not discovered until the following June.   At the time of the transfer the Company was in an embarrassed condition, and the stock was of little intrinsic value, though these facts were unknown to the Defendant, and he sup-

posed the representations to be true which he had made in this
respect to the Plaintiff. The affairs of the Company were soon
after wound up, and its effects passed into the hands of a re-
ceiver.

The complaint was dismissed, but the judgment was reversed,
and a new trial ordered by the General Term in the Fifth Dis-
trict. The case, as decided in the Supreme Court, is reported in
34 Barbour, 276.

*William F. Allen* for Appellant.

*Lewis Kingsley* and *Benjamin F. Rexford* for Respondent.

Parker, J.—The fact that the Defendant volunteered his
agency, did not absolve him from the duty of fidelity, in the
relation of trust and confidence which he sought and assumed.
The Plaintiff was induced to purchase, at an extravagant premium,
stock of the value of which he was ignorant, on the mistaken rep-
resentations of the Defendant, who professed to have none which
he was willing to sell. This assurance very naturally disarmed
the vigilance of the Respondent; and he availed himself of the
Defendant's offer, by authorizing him to buy at the price he
named. The Defendant did not buy, but sent him a certificate
for the amount required, concealing the fact that he had not
acted under the authority given, and that the stock transferred
was his own. There is no view of the facts in which the transac-
tion can be upheld. He stood in a relation to his principal
which disabled him from concluding a contract with himself,
without the knowledge or assent of the party he assumed to
represent. He undertook to act, at once, as seller and as pur-
chaser. He bought as agent and sold as owner. The ex-parte
bargain, thus concluded, proved advantageous to him and very
unfortunate for his principal. It was the right of the latter to
rescind it, on discovery of the breach of confidence. It is not
material to inquire whether the Defendant had any actual fraud-
ulent purpose. The making of a purchase from himself, without
authority from the Plaintiff, was a constructive fraud, in view of
the fiduciary relation which existed between the parties. In such

a case, the law delivers the agent from temptation by a præsump-
tio juris et de jure, which good intentions are unavailing to repel.
It is unnecessary to state our views more fully on this question,
as it is fully and ably discussed in the opinion delivered by Judge
Bacon, in the Court below; and his conclusions are abundantly
fortified by authority (34 Barb. 276; Gillett v. Peppercorne,
3 Beavan, 78; Story on Agency, § 214; Michoud v. Girod,
4 Howard's U. S. R. 555; Davoue v. Fanning, 2 John. Ch. R.
268–270; Moore v. Moore, 1 Seld. 262; N. Y. Central Ins.
Co. v. Nat. Prot. Ins. Co., 14 N. Y. 91; Gardner v. Ogden, 22, id.
347). The objection that this theory is inconsistent with that
stated in the complaint is not sustained by the record. The es-
sential facts are alleged, and the appropriate relief is demanded.
The fact that the complaint alleged other matters which the
Plaintiff failed to establish impairs neither his right nor his
remedy. Utile per inutile non vitiatur.

The order of the Supreme Court should be affirmed, with
judgment absolute for the Respondent.

All the Judges concurring,

Judgment accordingly.

                                    JOEL TIFFANY,
                                        State Reporter.