# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF MINNESOTA.

TOWN OF MARTINSBURG v. E. J. BUTLER and Another.[1]

July 22, 1910.·

Nos. 16,684—(188).[2]

**Evidence admissible under general denial.**
>    Under a general·denial, any evidence which tends to disprove the allega-
> tions of the complaint may be received.

**Appropriation for highway drain on private property.**
>    Chapter 44, Laws 1909, legalized prior appropriations of township funds
> for the construction of drains upon private property for the purpose of
> benefiting highways.

**Payment to town supervisor.**
>    The payment of money to a member of the board of supervisors of a
> township on account of drains constructed upon his private property is not
> included in or legalized by the enactment referred to.

Action in the district court for Renville county against E. J.
Butler and Mat Schnichels to recover $250, alleged to have been
paid out on two claims against plaintiff town, upon their authority,
while acting as town supervisors. The answers were general denials.

[1]Reported in 127 N. W. 420.          [2]April, 1910, term calendar.
       112 M.—1.

The facts are stated in the opinion. The case was tried before Powers, J., who at the close of plaintiff's testimony dismissed the action. From an order denying plaintiff's motion for a new trial, it appealed. Affirmed as to defendant Schnichels and reversed as to defendant Butler, with direction for further proceedings in accordance with the views expressed in the opinion.

Albert L. Young, for appellant.

J. M. Freeman, for respondents.

O'BRIEN, J.

The defendants were supervisors of the town of Martinsburg, the plaintiff in this action. Defendant Butler was the president of the board, and the owner of the west one-half of a section of land situated in the township, and hereafter referred to as section 22. Public highways ran upon the east and west sides of this section, and were, because of water, rendered partially unfit for travel. Without being established by proper statutory proceedings, drains were, under the employment of various landowners, constructed upon private property, including section 22, which not only drained wet and marshy lands upon that section, but drained and improved the highway as well. The drains were constructed by one Tompkins, and prior to the making of the improvement it seems to have been understood that, because of the expected benefit to the highways, a contribution towards payment for the work would be made from the town funds. Defendants, as a majority of the board of town supervisors, voted certain funds for that purpose, and this action is to recover the amounts paid in accordance therewith. Two town orders, each for $75, were issued to Tompkins pursuant to a vote of the board; the defendants both voting in favor of the payment, and the third member of the board opposing it. The cost of the drain upon defendant Butler's land was $470, of which amount it was understood $100 would be paid by the town, and an application was made to the county for an appropriation of that amount to the town for that purpose, or at least for the improvement of the highways. Butler paid Tompkins for the work on his land, and claimed that according to the prior understanding $100 for the amount so paid was an advancement

in behalf of the town. Thereafter Renville county, in which this township is located, appropriated $100 to the use of the town for highway purposes, and by a vote of the same supervisors this amount was paid over to the defendant Butler to reimburse him.

Defendant Butler testified concerning this payment: "The whole ditch right around sections 22, 23 and 15 is in the neighborhood of $1,300 worth, at 75 cents per rod; on my farm was $470 worth, at 75 cents a rod. One hundred dollars of this amount was paid by the town. I paid J. T. Tompkins for the ditch before I filed that bill. * * *" There was practically no dispute as to the facts.

Upon the oral argument in this court it was conceded that there was no intentional fraud or bad faith upon the part of the defendants. The learned trial court held that any illegality in the payments so made was cured by chapter 44, p. 43, Laws 1909, which is: "That all town or village orders and certificates of indebtedness heretofore issued and all expenditures of moneys heretofore made by town boards or village councils in this state in all cases where such orders and certificates have been issued and moneys expended on account of drainage of wet lands for the benefit of public highways and streets, are hereby legalized and declared to be valid for all intents and purposes: Provided, that nothing in this act contained shall be construed to affect any action now pending in any of the courts of this state."

1. It is insisted that, the answers of each defendant being general denials only, the evidence offered to show that the expenditures were made in good faith for the purpose of benefiting highways was not properly received. We think the evidence was proper. The complaint alleged an unlawful appropriation of public money, specifying the particular items so paid. Under a general denial, it was proper to show that the purpose of those appropriations was lawful. Caldwell v. Bruggerman, 4 Minn. 190 (270).

2. This curative act is very broad, and as the two payments of $75 each, which were directly made to Tompkins, were contributions from town funds for drains upon property not owned by either of the defendants, we entirely concur in the view of the trial court that they are covered by its provisions, and no recovery can be had

against the defendants upon account of either of them. This, however, does not apply to the payment of $100 to defendant Butler. As we understand, the ditching upon his land cost $470, of which $100 was paid from the town funds. He was, therefore, directly interested in the contract made with Tompkins for the construction of that portion of the drain, and had no right to appropriate by his official vote any of the town funds to reimburse himself for any of such cost. By sections 688 and 5032, R. L. 1905, Butler was prohibited from entering into the contract or arrangement with the town which he testified to, and money received by him under such an arrangement may be recovered back. Stone v. Bevans, 88 Minn. 127, 92 N. W. 520, 97 Am. St. 506; Bailey v. Strachan, 77 Minn. 526, 80 N. W. 694; Young v. City of Mankato, 97 Minn 4, 105 N. W. 969, 3 L.R.A.(N.S.) 849.

3. The curative act relied upon does not go to the extent of validating this transaction. It was intended to legalize an ultra vires act upon the part of a municipality, which, while unauthorized and beyond the power of the town, was not one which was absolutely forbidden by positive law. To hold that chapter 44, Laws 1909 (R. L. Supp. 1909, § 793–160), legalized a payment forbidden by the positive provisions of the statutes, would require a holding in effect that it constituted a repeal pro tanto of those provisions. Neither the language of the act itself nor its title is sufficient to justify such a conclusion. An examination of the record is convincing that the defendants acted openly and in entire good faith, and in the belief that the method adopted was an economical way of removing the water from the highways; but the prohibition in the statute against a public officer being interested in contracts with the municipality whose action his official vote controls rests in sound public policy, and the intention by the legislature to abrogate that salutary rule, either as to past or future transactions, must appear with the utmost clearness before we would feel justified in saying such was the intention. We hold, therefore, that plaintiff was, under the evidence, entitled to judgment against defendant Butler for the sum of $100 and interest from the time of its payment to him.

The order denying a new trial is affirmed as to defendant

Schnichels, and reversed as to defendant Butler, with direction for further proceedings in accordance with the views above expressed.